UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COREY HINDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 15-cv-10073-LTS |
| | ) |
| PETER A. PEPE, JR., | ) |
| THOMAS E. DICKHAUT, | ) |
| JAMES J. SABA, | ) |
| JOHN L. DEAN, and | ) |
| ROBERT E. STORK, | ) |
| | ) |
| Defendants. | ) |
| | ) |

ORDER ON MOTION TO DISMISS (DOC. NO. 31)

April 25, 2016

SOROKIN, J.

I.      INTRODUCTION

Plaintiff Corey Hinds ("Hinds") brings this action pursuant to 42 U.S.C. § 1983 against Peter

A. Pepe, Jr. ("Pepe"), former Deputy Commissioner of Correction; Thomas E. Dickhaut

("Dickhaut"), Deputy Commissioner for Operations; James J. Saba ("Saba"), Superintendent of

MCI-Cedar Junction; and John L. Dean ("Dean") and Robert E. Stork ("Stork"), both of whom are

correction officers at MCI-Cedar Junction (collectively, the "Defendants"). Doc. No. 1. Hinds,

who is incarcerated and proceeding *pro se*, sued the Defendants in their individual and official

capacities alleging that they violated his rights under the Fifth, Sixth, Eighth and Fourteenth

Amendments of the United States Constitution and under various provisions of the Massachusetts

Declaration of Rights. Id. All of the Defendants except for Pepe, who has not been served, have

moved to dismiss.  Doc. No. 31.  Hinds opposes their motion.  Doc. Nos. 44; 44-1.  For the reasons stated below, the Court ALLOWS the motion in part and DENIES the motion in part.

## II.    BACKGROUND

The facts are recited as they are alleged in the complaint.  Hinds was incarcerated at MCI Concord while awaiting trial on unspecified charges.  Doc. No. 1 ¶ 11.  On March 12, 2013, Hinds allegedly assaulted a correction officer.  Id. ¶ 12.  Immediately thereafter, Hinds was issued a disciplinary report, transferred to MCI Shirley and referred to the Department Disciplinary Unit ("DDU").  Id. ¶ 13.  Special Hearing Officer Mark Reilly ("Reilly") conducted a hearing on August 7, 2013 at which Hinds was represented by a student attorney.  Id. ¶¶ 14-15.  Reilly determined that Hinds was guilty and issued his findings.  Id. ¶ 16; Doc. No. 44-4.  Reilly sanctioned Hinds by placing him in the DDU for 42 months.  Doc. No. 44-4 at 4.  Hinds's attorney lodged an appeal, which Defendant Pepe denied.  Doc. Nos. 1 ¶¶ 18-19; 44-6.

On October 31, 2013, Hinds, still a pretrial detainee, was transferred to MCI Cedar Junction. Doc. No. 1 ¶ 20.  Hinds filed several grievances related to his placement in the DDU, all of which were denied by Defendants Stork and Saba.  Id. 1 ¶¶ 21-22; Doc. Nos. 44-7, 44-8, 44-9.  On November 19, 2013, Defendant Dean sprayed Hinds with a chemical agent known as "O.C." while Hinds was confined to his cell.  Doc. No. 1 ¶ 26.  Consequently, Hinds, whose asthmatic condition is documented in his medical records, was unable to breathe and was "momentarily unresponsive due to his medical complications with asthma."  Id. ¶¶ 26-27.  Hinds's grievance regarding this conduct was denied.  Id. ¶¶ 49-50.

On April 16, 2014, Hinds was sentenced to a term in state prison "for separate court matters," presumably the charges pending against him when he was a pretrial detainee.  Id. ¶ 28.  Hinds was once again placed in MCI Cedar Junction, this time in the Department Segregation Unit ("DSU").

2

Id. ¶ 29.  On May 1, 2014, Hinds was returned to the DDU to serve the remainder of his 42-month sanction.  Id. ¶ 31.

The remainder of Hinds's allegations concern his access to counsel and documents related to his state criminal case.  Hinds made several requests and filed a grievance seeking to obtain his copy of Black's Law Dictionary.  Id. ¶¶ 33, 35.  Stork denied his grievance.  Id. ¶ 36.  Hinds's attorney was denied access to Hinds, and Hinds did not receive mail sent to him by his attorney. Id. ¶¶ 38-39.  Hinds's grievances regarding his access to the courts, receipt of mail, and assistance of counsel were denied.  Id. ¶¶ 43-46, 53-54.

Hinds brings eleven counts against some or all of the Defendants.  Counts I and II allege that Hinds was denied procedural due process under the Fourteenth Amendment and the Massachusetts Declaration of Rights due to (1) his unlawful detainment in the DDU; (2) the Defendants' failure to consider housing alternatives; and (3) the lack of a DSU Board hearing pursuant to 103 C.M.R. 421.  Id. ¶¶ 61-63, 73-75.  Counts III and IV claim that Hinds was deprived of substantive due process under the Fourteenth Amendment and the Declaration of Rights due to the allegedly punitive nature of his placement in the DDU as a pretrial detainee and as a sentenced inmate.  Id. ¶¶ 79-81, 89-90, 93.  Counts V and VI allege that Mass. Gen. L. c. 276, § 52, which permits the transfer to state custody of a pretrial detainee who has previously served a felony sentence in a Massachusetts state prison, violates the equal protection clause of the Fourteenth Amendment and certain provisions of the Declaration of Rights.  Id. ¶¶ 97-99, 109.  Counts VII and VIII allege that Dean's use of the C.O. chemical spray constituted excessive force in violation of the Eighth Amendment, the Declaration of Rights, and 103 C.M.R 505.  Id. ¶¶ 113-117, 129.  Count IX claims that Hinds was deprived of his Fifth Amendment right to present a defense.  Id. ¶¶ 133-34, 136. Count X alleges that Hinds's placement in the DDU deprived him of the right to effective

3

assistance of counsel under the Sixth Amendment.  Id. ¶¶ 140-41.  Finally, Count XI is for intentional infliction of emotional distress as a result of Hinds's allegedly unlawful confinement to the DDU.  Id. ¶ 147.  Hinds seeks compensatory and punitive damages as well as injunctive relief in the form of release into the general prison population and deletion of the DDU sanction from his prison record.  Id. ¶ 151.

## III.    LEGAL STANDARD

A complaint will withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) only if it contains sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff."  Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007).  The complaint need not contain "detailed factual allegations," but it must set forth "more than labels and conclusions, . . . and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  A plaintiff fails to state a claim when he does not proffer "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  While the filings of *pro se* litigants should be liberally construed, see Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir.1997), *pro se* litigants are not excused from compliance with procedural rules or substantive law. Id.

In determining whether Hinds has stated a claim, the Court may consider documents to which Hinds refers in his complaint, including the exhibits attached thereto.  Fed. R. Civ. P. 10(c) ("A

copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); see Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

III. DISCUSSION

A. Procedural Due Process (Counts I and II)

Hinds avers that he was denied procedural due process by (1) his unlawful detainment in the DDU; (2) the Defendants' failure to consider housing alternatives; and (3) the lack of a DSU Board hearing pursuant to 103 C.M.R. 421.

"[P]risoners do not shed all constitutional rights at the prison gate," but "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 485 (1995) (internal quotation marks omitted). A deprivation rises to the level of a liberty interest if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

If there was a liberty interest at stake, Hinds was entitled to receive minimum procedural protections, including "(1) advance written notice of the disciplinary charges; (2) an opportunity . . . to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Smith v. Mass. Dept. of Corr., 936 F.2d 1390, 1398-99 (1st Cir. 1991) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). The written statement of the fact finder must demonstrate that his findings were "supported by some evidence in the record." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). Stated another way, "the relevant question is whether

there is any evidence in the record that could support the conclusion reached by the disciplinary board."[1] Id. at 455-56.

Here, Hinds was sanctioned to serve 42 months in the DDU for assaulting a correction officer. The conditions accompanying DDU confinement have been reported elsewhere. Inmates housed in their cells for up to 23 hours per day. Duclerc v. Mass. Dept. of Corr., No. 10-12050-DJC, 2012 WL 6615040, at * 2 (D. Mass. Dec. 18, 2012). They take their meals in their cells and are permitted no more than an hour of exercise per day, five days a week. Id. An inmate is handcuffed, shackled and strip-searched each time he leaves his cell. Id. Other courts, albeit outside of this Circuit, have concluded that similar conditions of confinement constitute atypical and significant hardship, implicating a liberty interest and the requirement of adequate disciplinary procedures. E.g., Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004) (solitary confinement for more than 500 days); Colon v. Howard, 215 F.3d 227, 230-31 (2d Cir. 2000) (solitary confinement for 305 days, including confinement to cell for 23 hours per day and one hour of exercise per day). In this case, the Court need not decide this question.

Hinds's complaint does not sufficiently allege facts demonstrating that he was denied due process. The complaint and the attached exhibits show that Hinds received a disciplinary report and a notice of the hearing. Doc. Nos. 44-2; 44-3 (letter from student attorney regarding pending hearing). He was represented by counsel at the hearing and permitted to call witnesses and offer evidence. Doc. No. 44-4. He received a written decision citing the evidence supporting the imposed sanction. Id. The decision explains that Reilly's sanction was predicated on the testimony and report of the correction officer Hinds assaulted and the video of the assault. Id. at 4. Although

---

[1] The standard applied by Massachusetts courts in evaluating procedural and substantive due process claims under the Massachusetts Declaration of Rights mirrors the federal standard for the parallel constitutional claims. See Jacks v. Spencer, Doc. No. 39-1 at 15 n.16 and cases cited.

Hinds alleges he was sanctioned without sufficient evidence, Doc. Nos. 1 ¶ 19; 44-5 (memorandum of appeal, arguing, in part, insufficiency of evidence), he provides no supporting detail, and his assertion is belied by the documents he submitted to the Court. These measures satisfy the due process requirements set forth in Wolff. 418 U.S. at 563-67; see Torres v. Commissioner of Corr., 427 Mass. 611, 618-19 (1998) (reviewing procedural safeguards incorporated by DDU disciplinary process and concluding that process "comports with the requirements of the Fourteenth Amendment"). In addition, Hinds's complaint fails to adequately allege that Reilly's sanction was unsupported by record evidence. Hill, 472 U.S. at 455-56. Hinds makes the conclusory allegation that the DDU sanction was upheld despite insufficient evidence, Doc. No. 1 ¶ 19, but provides no supporting facts. Hinds, therefore, fails to state a claim that his DDU confinement was unlawful.

Similarly, to the extent that Hinds's claims are premised on the theory that he was denied due process because the Defendants failed to consider housing alternatives, his procedural due process claims must also be dismissed. Hinds cites no supporting authority for the proposition that a hearing officer must consider alternatives to the DDU as a disciplinary sanction in order to satisfy the procedural safeguards set forth in Wolff. If anything, this argument pertains to Hinds's objection to the outcome of the process and, accordingly, Hinds's claim that he was denied substantive due process, which the Court addresses below.

The final component of Hinds's procedural due process claims is his assertion that he was entitled to a DSU Board hearing pursuant to 103 C.M.R 421 both as pretrial detainee and as a sentenced inmate. Doc. No. 1 ¶ 63. Hinds does not provide any basis for this assertion, and, indeed, there is none. Assuming the truth of all of his allegations, Hinds's confinement to the DDU is governed by 103 C.M.R 430, not 103 C.M.R 421. Placement in the DSU is not permitted for disciplinary reasons, 103 C.M.R 421.07, whereas Hinds was sanctioned with DDU

confinement to discipline him for the assault on the correction officer.  See 103 C.M.R 430.01

(regulations, including DDU procedures, intended to "govern[] disciplinary proceedings involving

inmates of state correctional institutions"); Haverty v. Commissioner of Corr., 437 Mass. 737, 760

(2002) (noting that 103 C.M.R 421 applies "to all placements of prisoners in segregated

confinement for nondisciplinary reasons" and that procedures required by regulations focus "not

on whether the prisoner has committed a specific infraction for which discipline may be warranted

for a particular period, but on whether his conduct generally warrants long-term segregation").

The Court concludes that Hinds's claims for denial of procedural due process, Counts I and II,

must be dismissed.

B.  Substantive Due Process (Counts III and IV)

Hinds alleges that his confinement to the DDU as a pretrial detainee and a sentenced inmate

violated his substantive due process rights.  "The substantive component of due process protects

against certain government actions regardless of the fairness of the procedures used to implement

them."  González-Fuentes v. Molina, 607 F.3d 864, 880 (1st Cir. 2010) (internal quotation marks

omitted).  A substantive due process claim thus attacks "the constitutionality of the deprivation

itself."  Id.  "The threshold question" in assessing a challenge to executive action "is whether the

behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to

shock the contemporary conscience."  Aguilar v. United States Immigration & Customs Enf't Div.

Of the Dept. of Homeland Sec., 510 F.3d 1, 21 (1st Cir. 2007) (quoting County of Sacramento v.

Lewis, 523 U.S. 833, 847 n.8 (1998)).  Government conduct egregious enough to shock the

conscience is "likely to find its roots in conduct intended to injure in some way unjustifiable by

any government interest."  Id. at 21-22 (internal quotation marks omitted).  The conduct in question

is to be assessed in light of the situation.  "[I]n situations where actual deliberation on the part of

a governmental defendant is practical, the defendant may be held to have engaged in conscience-shocking activity by exercising deliberate indifference." González-Fuentes, 607 F.3d at 881 (internal quotation marks omitted).

Pretrial detainees "receive constitutional protections superior to those afforded sentenced inmates." Ford v. Bender, 768 F.3d 15, 24 (1st Cir. 2014). Hinds characterizes his DDU confinement as punishment. Pretrial detainees, as Hinds was when he received the DDU sanction, have a right to be free from punishment. Bell v. Wolfish, 441 U.S. 520 (1979), held that punishment "prior to an adjudication of guilt" does not accord with substantive due process. Id. at 535-36. But the inquiry does not end there. Some forms of punishment are permissible. "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose." Collazo-Leon v. United States Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995) (quoting Bell, 441 U.S. at 538-39). Thus, a punitive measure is nonetheless constitutional so long as it "it also furthers some legitimate governmental objective such as addressing a specific institutional violation and is not excessive in light of the seriousness of the violation." Id. at 318.

Hinds alleges that his substantive due process rights were violated because he had to endure the punitive conditions of confinement in the DDU, as a pretrial detainee and as a convicted inmate. Doc. No. 1 ¶ 81. He argues that he should have been placed in the DSU instead, which would not have constituted punitive confinement. Doc. No. 44 at 9.

Hinds's complaint fails to state a claim because Hinds's confinement to the DDU is supported by the government's legitimate objective of "maintaining safety, internal order, and security within" the prison. Collazo-Leon, 51 F.3d at 318 (citing Bell, 441 U.S. at 540). "If there is a reasonable relation between the sanctions and legitimate institutional policies, an intent to punish

the detainee for prior unproven criminal conduct cannot be inferred." Id. (emphasis removed). The First Circuit has recognized that prison authorities have broad discretion "to take reasonable and necessary action, including punishment, to enforce the prison disciplinary regime and to deter even pretrial detainees from violation of its requirements." Id. Hinds's complaint and the accompanying records demonstrate that the sanction Hinds received was reasonably related to the legitimate efforts of prison authorities to enforce prison discipline, not to punish Hinds for unproven criminal conduct. While incarceration in the DDU serves a punitive purpose, it also serves as a deterrent, "demonstrating to all other inmates that good behavior is expected of them and that, if they do not conform to prison rules, there will be adverse consequences." Commonwealth v. Forte, 423 Mass. 672, 676-77 (1996). Moreover, Hinds does not allege that the sanction of 42 months in the DDU was excessive in light of the seriousness of his violation. Hinds assaulted a corrections officer, which, "[i]n the hierarchy of wrongs that might be committed in prison," is "among the most serious, and the discipline imposed may be concomitantly severe." Forte, 423 Mass. at 677.

Hinds also avers that his confinement to the DDU as a convicted inmate, as opposed to a pretrial detainee, violated his substantive due process rights. Hinds declined to respond to the Defendants' argument that his return to the DDU following his sentence did not violate his substantive due process rights. Doc. No. 44-1 at 5. Indeed, there is no authority for the proposition that Hinds was improperly returned to the DDU after his conviction or that he was entitled to an additional hearing regarding his DDU sanction. Resuming a sentence to the DDU is not so egregious as to shock the conscience. Duclerc, 2012 WL 6615040, at * 8. In addition, any interest Hinds had in rejoining the general prison population was outweighed by the government's legitimate interest in enforcing prison discipline. Jacks v. Spencer, Doc. No. 39-1 at 27.

Because Hinds's confinement to the DDU addressed a specific violation, an assault of a corrections officer, and it was not excessive in light of the seriousness of that violation, Hinds has failed to state a claim for violation of substantive due process.  Hinds does not aver any conduct on the part of the Defendants, either when Hinds was a pretrial detainee or when he was a sentenced inmate, with respect to his DDU sanction that was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Gonzáles-Fuentes, 607 F.3d at 880.  Moreover, in light of the legitimate purpose of enforcing prison discipline, Hinds has not sufficiently alleged that the Defendants acted with deliberate indifference.  Counts III and IV are dismissed.

C. Equal Protection (Counts V and VI)

In Counts V and VI, Hinds asserts an Equal Protection challenge to Mass. Gen. L. c. 276, § 52A, which provides, in relevant part:

> [Persons held in jail for trial], if they have been previously incarcerated in a correctional institution of the commonwealth under sentence for a felony, may, with the approval of the district attorney, be removed by the commissioner of correction to a correctional institution of the commonwealth . . . . .

The statute thus permits state confinement of a pretrial detainee who has previously served a prior Massachusetts felony sentence, but not pretrial detainees who have served sentences outside of Massachusetts.  Hinds argues that the statute violates the Equal Protection clause because it treats detainees who have previously served a Massachusetts felony sentence differently than those who have served felony sentences elsewhere.  Doc. No. 44-1 at 11.

The Defendants argue, and the Court agrees, that, even if Section 52A violates the Equal Protection clause, the Defendants are entitled to immunity, absolute or qualified, because of the existence of a court order requiring the Sheriff of Suffolk County to utilize Section 52A to transfer pretrial detainees to state facilities to ease overcrowding in the county correctional facility.  Doc. Nos. 32 at 14-16; 32-1 ¶ 5 (order by Judge Liacos, dated November 6, 1990, requiring Suffolk

County Sheriff to utilize Section 52A to transfer pretrial detainees due to population pressures). The court order resulted from litigation regarding overcrowding in the Charles Street Jail.  Id. at 2.

Hinds was awaiting trial in Suffolk County, placing him in the ambit of Judge Liacos's order permitting transfer to a state correctional facility.  Doc. No. 1 ¶ 11.  "[P]rison officials charged with executing facially valid court orders enjoy absolute immunity from § 1983 liability for conduct prescribed by those orders."  Engebretson v. Mahoney, 724 F.3d 1034, 1039 (9th Cir. 2013).  Even if absolute immunity does not apply, qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  A claim of qualified immunity requires the Court to decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." Rocket Learning, Inc. v. River-Sánchez, 715 F.3d 1, 8 (1st Cir. 2013) (internal quotation marks omitted).  Assuming Hinds has alleged a violation of his Equal Protection rights, against the backdrop of Judge Liacos's order, the Defendants could not have reasonably conjectured that Hinds's transfer to a state correctional facility could implicate those rights.   Thus, the Defendants are entitled to immunity, either absolute or qualified, and Hinds's claim that Chapter 52A violates the Equal Protection clause fails.

D.  Excessive Force (Counts VII and VIII)

Hinds next alleges that Defendant Dean used excessive force when he sprayed Hinds with the O.C. spray.  "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual

punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). An allegation of the use of excessive force by prison officials requires the Court to ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Serious injury need not result to make out a claim for excessive force. "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The Defendants argue that Hinds's claim fails because he "provides no supporting detail as to the circumstances of the alleged event or the nature or extent of any resulting injuries." Doc. No. 32 at 16. Hinds's complaint, however, alleges that he was confined to his cell and engaged in no activity posing a serious risk or threat when he was sprayed with the O.C. chemical, and that he was unable to breathe and was momentarily unresponsive due to an asthmatic response to the chemical spray. Doc. No. 1 ¶¶ 26-27, 113. Hinds's institutional medical records note his asthmatic condition. Id. ¶ 26; Doc. No. 44-20 (Hinds's physical assessment indicating that he had a medical history of asthma). Inferences may be drawn from these allegations that force was applied outside of the context of institutional security and that Dean's intent could plausibly have risen to the malicious and sadistic level.. The fact that Hinds does not allege serious injury does not preclude his claim. Hinds, therefore, sufficiently alleges the improper use of excessive force against Dean.

Hinds fails to state a claim, however, against Defendant Pepe and Saba for supervisory liability. Hinds makes the conclusory allegations that Pepe and Saba "had reasonable opportunity to prevent or resolve the use of excessive force" and that they "permitted, encouraged and supported the use of excessive force." Doc. No. 1 ¶ 118. Section 1983 does not impose *respondeat superior* liability on supervisors for the actions of their subordinates. Hegarty v. Somerset Cty., 53 F.3d 1367, 1379 (1st Cir. 1995). "Absent participation in the challenged conduct, a supervisor can be held liable

only if (1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence of the supervisor amounting to deliberate indifference." Id. at 1379-80 (internal quotation marks, alterations and emphasis omitted).  Situations in which supervisory liability attaches include a supervisor who "formulates a policy or engages in a practice that leads to a civil rights violation committed by another" and who is aware of circumstances likely to result in a violation of constitutional rights. Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998); Springer v. Spencer, Civil No. 13-10083-FDS, 2014 WL 2515694, at * 6 (D. Mass. June 3, 2014).

Hinds's allegations that Pepe and Saba had the opportunity to prevent the excessive use of force and that they permitted, encouraged, and supported the use of force do not sufficiently establish an affirmative link with Dean's alleged use of force.  Aside from these conclusory allegations, Hinds does not allege any action or inaction on the part of Pepe and Saba from which gross negligence or deliberate indifference may be inferred.  There are no allegations that Pepe and Saba had a policy or was aware of the conditions that led to the alleged civil rights violation. The excessive force claims against Pepe and Saba, therefore, must be dismissed.

E.  Right to Present a Defense and to Effective Assistance of Counsel (Counts IX and X)

In Counts IX and X, Hinds asserts that he was deprived of his Fifth Amendment right to present a defense and his Sixth Amendment right to effective assistance of counsel.  Doc. No. 1 ¶¶ 133-34, 140-41.  Hinds alleges that he did not receive mail from his attorney representing him in his state criminal proceeding; that he was deprived of his copy of Black's Law Dictionary; and that his attorney was prevented from consulting with him while he was in the DDU.  Id. ¶¶ 33, 133, 140.  These claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994).  In that case, the

Supreme Court held that "in order to recover damages . . . for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." Id. at 486-87 (footnote omitted).  In other words, if a favorable determination of Hinds's present claims would call into question the validity of his state criminal conviction, then his claims must be dismissed unless he can demonstrate that the criminal conviction has been nullified.  A finding that Hinds's rights to present a defense or to effective assistance of counsel in his state criminal case were comprised would necessarily imply the invalidity of his conviction, yet Hinds has not demonstrated that the conviction has been invalidated.  Counts IX and X must be dismissed.

F.  Intentional Infliction of Emotional Distress (Count XI)

Hinds's final claim is for intentional infliction of emotional distress due to his confinement in the DDU.  Doc. No. 1 ¶ 147.  "A claim for intentional infliction of emotional distress requires '(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of the conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's stress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure it.'" Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976)) (internal quotation marks and alterations omitted).  "The standard for making a claim of intentional infliction of emotional distress is very high." Id.

Hinds fails to allege facts that support any element of the claim.  Even if his confinement to the DDU were to be determined to be unlawful, intent that is more than "tortious or even criminal" is required to make out a claim for intentional infliction of emotional distress.  Id.  Hinds has not demonstrated that confining him to the DDU was extreme, outrageous, beyond the bounds of decency, or intolerable in a civilized community.  Nor has Hinds offered facts that support the severity of his alleged distress, to the point where a reasonable person could not endure it.

IV.    CONCLUSION

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART the Defendants' motion to dismiss, Doc. No. 31.  All counts against all defendants (including Pepe, who has not been served, but for whom the complaint provides no basis to sue) are dismissed except for Counts VII and VIII against Defendant Dean.

The Court finds no need for a Rule 16 conference.  The parties shall exchange initial discovery within fourteen days; complete all discovery by May 27, 2016; and file any motions for summary judgment no later than June 27.  Oppositions to summary judgment motions are due within 30 days of the filing of the motion.

In addition, Hinds shall answer the following interrogatory, under oath, within fourteen days: Describe the circumstances surrounding the application of the chemical spray and the factual basis for your assertion that Defendant Dean used excessive force.  Defendant Dean shall answer the following interrogatory, under oath, within fourteen days:  Describe the circumstances surrounding your application of the chemical spray and the factual basis for your assertion that you did not use excessive force.  After receipt of the other side's answer, either side may file the answer with the

Court and seek leave to file a summary judgment motion prior to the conclusion of discovery.

    **So Ordered.**

/s/ Leo T. Sorokin
United States District Judge
